**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CATHY S. HAMLIN, | CASE NO. 1:07-CV-3822 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff Cathy S. Hamlin ("Hamlin") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Ms. Hamlin's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423 et seq. (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court VACATES and REMANDS the final decision of the Commissioner for proceedings consistent with this Order.

## I. Procedural History

On January 9, 2003, Ms. Hamlin applied for SSI, originally alleging she became unable to work on June 2, 1994 because of asthma and pancreatitis, but later amending the date of her alleged onset of disability to January 9, 2003.  The Commissioner denied her claim initially and on reconsideration.  Ms. Hamlin timely requested an administrative hearing.

On October 31, 2005, Administrative Law Judge Alexander Weir III ("ALJ Weir" or "ALJ") held a hearing on Ms. Hamlin's claims.  Ms. Hamlin and a vocational expert ("VE") testified at the hearing, with Ms. Hamlin's attorney in attendance.  On March 17, 2006, ALJ Weir found that Ms. Hamlin's pancreatitis, opiate dependence, and alcohol dependence were severe impairments, that Ms. Hamlin is disabled, and that Ms. Hamlin would not be disabled absent her drug and alcohol abuse.  Therefore, he determined that she is ineligible for benefits under the Act.

ALJ Weir's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Ms. Hamlin filed an appeal to this Court.

On appeal, Ms. Hamlin claims the ALJ erred (1) in his determination that drugs and alcohol dependence were material factors to a finding of disability and that there were no further severe impairments; and (2) in failing to grant controlling weight to the opinion of the plaintiff's treating physician.

2

## II.  Evidence

### A.  Personal and Vocational Evidence

At the time of the ALJ Weir's decision, Ms. Hamlin was 48 years old.  (Tr. 13, 53, 817.)  Ms. Hamlin completed the eleventh grade, but had no past relevant work experience.   (Tr. 67, 835.)

### B.  Medical Evidence

The medical evidence reveals that between January 2003 and the time of the October 2005 hearing, Ms. Hamlin received emergency room treatment and was occasionally hospitalized for  acute pancreatitis.  During the visits, Ms. Hamlin generally experienced symptoms of severe abdominal pain, nausea, vomiting, and/or diarrhea.  Treatment typically involved intravenous hydration and pain medication while hospitalized.  Upon discharge, doctors usually gave Ms. Hamlin prescriptions for pain medication and advised her to restrict her diet and to avoid alcohol and cigarettes.

January 5-7, 2003, Ms. Hamlin was hospitalized for acute pancreatitis.  (Tr. 517-18, 519.) Ms. Hamlin reported abdominal pain, which radiated to her back, and nausea.  (Tr. 520, 525.)  A CT of the abdomen and pelvis revealed a nodule in the left lung and a 2.5 cm hypodensity right adnexal structure.  (Tr. 565.)

On  February 5, 2003, Ms. Hamlin went to the emergency room for nausea, vomiting, epigastric abdominal pain, acute exacerbation of bronchial asthma and aggravation of pancreatic enzymes.  (Tr. 511.)   Ms. Hamlin's diagnoses were acute exacerbation of chronic bronchial asthma, paralytic ileus, passive acute pancreatitis, hepatitis C, and tobacco abuse.  (Tr. 512.)  The emergency room physician noted that

3

Ms. Hamlin had "been smoking – in spite of the history of bronchial asthma." (Tr. 511.)

On February 8, 2003, Dr. Robert Straub, Ms. Hamlin's treating physician, examined Ms. Hamlin, who reported a four month history of daily abdominal pain in the epigastric and perinumbilical regions that had not resolved, back pain, and chronic constipation. (Tr. 509.) On this date, Ms. Hamlin claimed to have quit smoking two years prior. (*Id.*) She also asserted that she consumed two to three alcoholic beverages per month and never used intravenous drugs. (*Id.*) Dr. Straub's examination revealed mild tenderness throughout the epigastric and perinumbilical area. (*Id.*) Dr. Straub's assessment was chronic epigastric and perinumbilical abdominal pain and possible low grade chronic pancreatitis. (*Id.*)

On February 10, 2003, Ms. Hamlin underwent endoscopic retrograde cholangiography and pancreatography with endoscopic sphincterotomy. (Tr. 507.) The procedure revealed a possible pancreas divsium and provided possible explanation for Ms. Hamlin's "low-grade pancreatitis and her recurrent abdominal pain." (*Id.*) Her prognosis for recuperation in February was described as "good." (Tr. 506.)

On February 26, 2003, Ms. Hamlin went to the emergency room complaining of moderate to severe abdominal pain. (Tr. 505.) Final diagnoses were acute pancreatitis, chronic bronchial asthma without exacerbation, narrowing of ampulla of vater, possible calculus of the gallbladder, hiatal hernia and nausea. (*Id.*) Examination revealed marked tenderness toward the epigastric and periunbillical area. (*Id.*)

On March 4, 2003, Ms. Hamlin went to North Shore Gastroenterology complaining of pain the abdomen and epigastric area, and nausea. (Tr. 504.) Lab work on March 11, 2003 revealed elevated amylase and lipase. (Tr. 502.)

On March 19, 2003, Ms. Hamlin went to the emergency room complaining of abdominal pain, nausea, and vomiting. (Tr. 484.) Examination revealed tenderness in the upper left quadrant. (Tr. 493.)

In a Basic Medical form, Dr. Straub diagnosed Ms. Hamlin with pancreas divisum, recurrent acute pancreatitis, hepatitis C, and asthma. Dr. Straub opined that her health was "poor but stable" and that Ms. Hamlin would "tend to have frequent absences from work because of unpredictable bouts of severe abdominal pain from pancreatitis." He also opined that Ms. Hamlin's standing, sitting, and lifting/carrying abilities were not affected by her condition. (Tr. 513-14.)

Ms. Hamlin also received treatment of pancreatitis in June, August, September, October , November, and December. (Tr. 360, 389, 401, 432, 449, 477.) Typically, she was discharged with no activity restrictions. (*Id.*)

During her June treatment, Ms. Hamlin tested positive for alcohol on a toxicology screen. (Tr. 481.)

In August, her lungs were clear and her breathing was fine. (Tr. 452, 457.) She denied alcohol consumption, except for occasional use, but was advised upon discharge not to consume any alcohol. (Tr. 457, 459.)

In September, Ms. Hamlin went to the emergency room complaining of chest tightness and abdominal pain. (Tr. 427.) Final diagnoses were chronic pancreatitis, asthma exacerbation, and alcohol ingestion. (Tr. 431.) After examination revealed expiratory wheezes, she was given three aerosol treatments. (Tr. 431, 435.) Ms. Hamlin was again directed to stop drinking. (Tr. 432.) She also was advised to continue her Percocet and was prescribed Prednisone and Albuterol. (Tr. 431, 435.)

5

Lab work revealed an elevated aspirate transaminase ("AST") and alanine transaminase ("ALT") levels, which indicate liver damage, sometimes associated with hepatitis.  (Tr. 438.)

In October, Ms. Hamlin was hospitalized for three days for moderate to severe abdominal pain, nausea, and vomiting.  (Tr. 399.)  A toxicology report was negative for alcohol. (Tr. 413.)  Final diagnoses were acute exacerbation of pancreatitis and chronic bronchial asthma.  (Tr. 399.)  Although Ms. Hamlin's asthma was stable, she was still advised to stop smoking.  (Tr. 399, 680.)  It was also noted that "[h]er hepatitis [was] stable and her pancreatitis although it [was] giving her some abdominal pain and recurrent exacerbation, [was] well under control."  (Tr. 680.)

In December 2003, Ms. Hamlin was hospitalized for a week when she presented with moderate to severe abdominal pain with nausea and vomiting.  (Tr. 358.)  While in the hospital, she developed an infection and had an exacerbation of her bronchial asthma, which was treated with bronchodilators.  (Tr. 358, 376.)   Ms. Hamlin reported that she was a nonsmoker and that she used to drink, but that she had stopped drinking when her pancreatitis began.  (Tr. 367.)  Final diagnoses were acute exacerbation of chronic pancreatitis, viral hepatitis C, agranulocytosis probably secondary to viral infection, and acute exacerbation of chronic bronchial asthma.  (Tr. 359.)

Ms. Hamlin was treated for pancreatitis in January, February, March, and April.  (Tr. 288, 316, 341.)   January 29 through February 3, 2004, Ms. Hamlin was hospitalized for  abdominal pain.  (Tr. 337-38.)  Examination revealed marked tenderness.   (Tr. 337.)  Pancreatic enzymes were elevated to twice the normal value.  (Tr. 339, 354.)  Ms. Hamlin also presented with increased AST levels.  (Tr. 354.)  Her

diagnoses was acute exacerbation of chronic pancreatis, chronic viral hepatitis C, bronchial asthma with acute exacerbation, gastroesophageal reflux disease, and restless leg syndrome.  (Tr. 340.)  Ms. Hamlin was discharged without any activity restrictions.  (Tr. 350.)

On February 17, 2004, Ms. Hamlin underwent a liver biopsy, which revealed a small subcapsular hematoma.  (Tr. 333-34.)  The pathology report diagnosed chronic hepatitis C, G2 (mild Stage 2-3). (Tr. 335.)

On March 3, 2004, Ms. Hamlin went to the emergency room for abdominal pain.  (Tr. 318.)  She was diagnosed with chronic abdominal pain with unclear etiology.  (Tr. 320.)  Lab work revealed high lipase and glucose, but low calcium and magnesium.  (Tr. 324.)  Alcohol use was recorded and Ms. Hamlin was instructed not to drink.  (Tr. 316, 321.)

On March 23, 2004, Ms. Hamlin underwent a colonoscopy, which revealed internal and external hemorrhoids and chronic abdominal pain.  (Tr. 311.)   An upper gastrointestinal tract examination was "normal."  (Tr. 312.)  A toxicology report was negative for alcohol.  (Tr. 314.)

Ms. Hamlin was hospitalized from March 31, 2004 through April 2, 2004 for acute gastroenteritis, and exacerbation of chronic pancreatitis after experiencing nausea, vomiting, diarrhea, and abdominal pain for several days.  (Tr. 287-89.)  Ms. Hamlin described her pain as a generalized twisting/burning sensation in the epigastric region and spreading all over.  (Tr. 295.)  Examination revealed tenderness in the epigastric, umbilical, and left upper quadrant areas.  (Tr. 296.)  Lab work revealed elevated lipase and AST.  (Tr. 302.)  During her hospitalization, Ms. Hamlin reported occasional alcohol

consumption, but denied use of any other drugs. (Tr. 295.) She was discharged without any activity restrictions. (Tr. 288.)

Ms. Hamlin was hospitalized from June 11 through 16, 2004 with complaints of nausea, vomiting, severe abdominal pain, and diarrhea for three days and was admitted with elevated pancreatic enzymes. (Tr. 258, 263, 264.) She was given Percocet and Oxycontin. (Tr. 258.) Her diagnoses were acute pancreatitis, chronic hepatitis C, and chronic bronchial asthma. (*Id.*) Dr. Struab found abdominal tenderness and felt that Ms. Hamlin's symptoms were probably due to acute pancreatitis. (Tr. 266.) Lab work revealed elevated lipase, AST, and ALT levels. (Tr. 273.) Lab work was positive for hepatitis C. (Tr. 278.) At this time, Ms. Hamlin's asthma was considered "under control." (Tr. 270.) Ms. Hamlin reported being able to manage household chores with flare ups of pancreatitis approximately every four months at which time she need to rest. (*Id.*) She was discharged without any activity restrictions.

Ms. Hamlin was readmitted from July 28, 2004 through July 30, 2004 for pancreatitis (Tr. 256.)

On September 9, 2004, Ms. Hamlin went to the emergency room complaining of vomiting and upper abdominal pain. (Tr. 244, 245.) Examination revealed epigastric tenderness. (Tr. 249.) Lab work showed elevated lipase and AST levels. (Tr. 253.) Ms. Hamlin was then admitted for hospitalization until September 13, 2004. (Tr. 226.) Ms. Hamlin reported no alcohol use in four months. (Tr. 233.) A radiology report showed active lung disease. (Tr. 239.) Lab work revealed elevated lipase and amylase levels. (Tr. 238.) Ms. Hamlin continued to receive Percocet and Oxycontin. (Tr. 236.) She was discharged without any activity restrictions. (Tr. 260.)

8

From November 4 through 7, 2004, Ms. Hamlin was again hospitalized when she presented with a three day history of persistent nausea, vomiting, and abdominal pain. (Tr. 205.)  Her hepatitis C was asymptomatic and her asthma was "under good control." (Tr. 205.)   Her doctor opined that she would "continue to experience recurrent exacerbation of pancreatitis," and referred her "for possible correction of pancreatitic duct division." (Tr. 205-06.)  Lab work revealed elevated lipase, AST, and ALT levels. (Tr. 220.)

On January 4, 2005, Ms. Hamlin went to the emergency room complaining of upper abdominal pain, nausea, and diarrhea for several days.  (Tr. 172-73.)   A diagnosis of pancreatitis was made.  (Tr. 174.)

Ms. Hamlin was then admitted for hospitalization from January 5 through 11, 2005 when she presented with nausea, vomiting, and diarrhea within 12 hours from her prior emergency room visit.  (Tr. 183.)  She was placed on Oxycontin and Percocet for her pain.  (*Id.*)  Her breathing was clear.  A chest x-ray revealed a small nodule in the left upper lobe, although no active lung disease.  Her asthma was described as stable. (Tr. 172, 183-84.)  Lab work revealed elevated lipase, AST, and ALT levels.  (Tr. 198-99.)   Final diagnosis was acute gastroenteritis with mild dehydration.  (Tr. 183.)  Ms. Hamlin was released with no activity restrictions.  (Tr. 185.)

From March 9 through 13, 2005, Ms. Hamlin was hospitalized after presenting with acute abdominal pain, nausea, vomiting, and diarrhea.  (Tr. 138.)  At the time of discharge, she was diagnosed with probable viral acute gastroenteritis, dehydration, mild hypopotassemia, history of bronchial asthma, chronic hepatitis C, and chronic pancreatitis secondary to pancreatic disease.  (Tr. 139.)  Ms. Hamlin was seen by Dr.

Straub in consultation of her pancreatitis. His examination revealed a slightly distended abdomen, which was mildly diffusely tender. (Tr. 146.) Lab work revealed an elevated AST level. (Tr. 152.) Ms. Hamlin denied any alcohol consumption and was again discharged without any activity restrictions. (Tr. 140, 144.)

From May 12 through 16, 2005, Ms. Hamlin was hospitalized following complaints of abdominal pain, nausea, vomiting, and diarrhea for two days prior to admission. (Tr. 731.) Ms. Hamlin's daughter reported "concern that [her mother] misused her oral analgesics," and "informed [hospital staff] about [her mother's] habit of drug abuse in the past, while she was taking medications, she may have been taking an excessive amount of alcohol. . . ." (Tr. 731.) Hospital staff then confronted Ms. Hamlin about her alcohol intake. Ms. Hamlin initially denied abusing alcohol, but "subsequently admitted to it." (*Id.*) She was then counseled "about the dangers of mixing both medications and alcohol and made a promise to discontinue drinking while she [was] on medication." (*Id.*) Final diagnoses were acute gastroenteritis with mild dehydration, chronic pancreatitis, chronic bronchial asthma-stable, hepatitis C, alcohol abuse in remission, and tobacco abuse. (*Id.*) Ms. Hamlin was discharged without any activity restrictions. (*Id.*)

From July 30 through August 2, 2005, Ms. Hamlin was hospitalized for complaints of abdominal pain, nausea, and vomiting. (Tr. 777.) Final diagnoses included acute pancreatitis, viral hepatitis C, esophageal reflux, asthma, and calculus of gallbladder without cholecystiis. (Tr. 778.)

From August 3 through 8, 2005, Ms. Hamlin was hospitalized again when she was brought to the hospital by a family friend, complaining of confusion after a fall, as a

result of a narcotic overdose.  (Tr. 771.)  During a psychiatric evaluation, Ms. Hamlin denied a suicide attempt and feeling "hopeless or helpless or depressed in any serious way."  (Tr.785-86.)  Ms. Hamlin admitted to drinking vodka a couple times per week, and reported past cocaine and intravenous heroin use.  (Tr. 785-86.)  Final diagnoses included poison by opiates, related to narcotics; alcohol withdrawal and dependence; volume depletion disorder; viral hepatitis; accidental poisoning by opiates; herpetic gingiva vs. stomatis; contusion of the face and back; accidental fall; chronic pancreatitis; backache; tobacco use disorder; esophageal reflux; and asthma.  (Tr. 772.)

On a follow up visit eight days later, Ms. Hamlin denied drinking any alcohol, however, her doctor noted that her breath smelled of alcohol and that she was "behaving like she [was] under the influence."  (Tr. 775.)

### C.  Hearing Testimony

Ms. Hamlin alleged that she could not work due to her recurrent episodes of pancreatitis.  (Tr. 822.)  She testified that she experienced severe bouts of pancreatitis approximately "every two months in the last couple of years" and that she has related problems and symptoms which occurred in-between her visits to the hospital.  (Tr. 822, 823.)  When she had these bouts, she would have to go to the emergency room for intravenous fluids and medication because of vomiting and diarrhea.  (Tr. 823.)  Ms Hamlin testified that she was not currently taking any medication for her hepatitis.  (Tr. 824.)  She stated that approximately eight or nine months prior to the hearing, she began counseling for severe depression.  (Tr. 826.) Ms. Hamlin did not testify about her asthma.

When questioned about alcohol use, Ms. Hamlin stated that she had not consumed alcohol since her last hospitalization in August 2005 and that before that she did not think she "drank very much hardly at all.  Very seldom."  (Tr. 827.)  Ms. Hamlin testified that no one had ever told her that she had an alcohol problem.  (Tr. 829.)  She also answered in the affirmative when the ALJ asked her if she was told pancreatitis was caused by drinking and that drinking would agitate the pancreatitis.  (Tr. 829.)  Ms. Hamlin denied illicit drug use.  (Tr. 834.)

Ms. Hamlin explained that she "always [had] some kind of pain," and that she thought she had "maybe four good days out of month."  (Tr. 824, 825.)  She stated that she could cook food in the microwave, but she could not "cook big meals or anything because [I could not] stand and do the dishes because of my back when I had that Staph infection in the backbone" in 1994 when she first applied for benefits.  (Tr. 825.)  In addition, Ms. Hamlin testified that she could do some of her own lighter weight laundry and could "straighten up the house a little bit," but that she could not vacuum and did not do any grocery shopping. (Tr. 828.)

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).   A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain

income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second,  the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found that Ms. Hamlin's opiate dependence, alcohol dependence, and pancretitis were severe impairments.  He found that her opiate and alcohol dependence

13

met listing 12.09[1] and that Ms. Hamlin is disabled.  The ALJ further determined that Ms. Hamlin's drug and alcohol addictions are material to the determination of her disability and that in the absence of drug and alcohol abuse, she would not be disabled. Therefore, he found that Ms. Hamlin is not eligible for benefits under the Act.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and

---

[1]Listing 12.09 provides:

> 12.09 Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
>
> The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
>
> A. Organic mental disorders. Evaluate under 12.02.
>
> B. Depressive syndrome. Evaluate under 12.04.
>
> C. Anxiety disorders. Evaluate under 12.06.
>
> D. Personality disorders. Evaluate under 12.08.
>
> E. Peripheral neuropathies. Evaluate under 11.14.
>
> F. Liver damage. Evaluate under 5.05.
>
> G. Gastritis. Evaluate under 5.00.
>
> H. Pancreatitis. Evaluate under 5.08.
>
> I. Seizures. Evaluate under 11.02 or 11.03.

20 C.F.R. Part 404, Subpart P, App. 1 § 12.09.

14

inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Ms. Hamlin asserts that the ALJ erred in finding that her pancreatitis, bronchial asthma, and hepatitis are not severe impairments, resulting in limitations, independent of drug and alcohol abuse.  The Court agrees that the ALJ did not fully address these issues.

### A. Severe Impairments and Limitations

Ms. Hamlin asserts that the substantial evidence demonstrates that her pancreatitis, bronchial asthma, and hepatitis are severe impairments, resulting in limitations.

The ALJ found that Ms. Hamlin's opiate dependence, alcohol dependence, and pancreatitis are severe impairments, but made no findings regarding her asthma and hepatitis.   He further found limitations related solely to alcohol and drug abuse.

In this Circuit, if the medical evidence alone indicates that a claimant's impairments impact his or her ability to perform basic work activities in even a *de minimis* way, a determination that the impairments are not severe will not be supported by substantial

evidence.[2]  *See Halcomb v. Bowen*, No. 86-5493, 1987 WL 36064, at *3 (6th Cir. May 27, 1987); *Farris v. Secretary of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985); *Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 691-92 (6th Cir. 1985); Social Security Ruling 96-3P: *Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe*, 1996 WL 374181, at *1.  A denial at step two is allowed to permit the Commissioner to "screen out totally groundless claims."  *Farris*, 773 F.2d at 89.

In the instant action, the ALJ provided no discussion at all why Ms. Hamlin's asthma and hepatitis C are not severe impairments.  While the Commissioner, in his brief, provides a detailed review of the medical evidence and why Ms. Hamlin's asthma and hepatitis do not constitute severe impairments and concludes that the ALJ was correct in his rejecting those opinions, the ALJ did not do the same.  Therefore, the Commissioner's recitation, no matter how well reasoned, is purely conjecture upon the part of counsel and cannot serve as the basis for review by a court.  *See Watford v. Massanari*, No. 1:00 CV 00004, p. 13 (N.D. Ohio April 24, 2001); *see also National Labor Relations Board v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 715 n.1 (2001) (counsel's *post hoc* rationalizations are not substituted for the reasons supplied by the administration); *Securities and Exchange Comm'n v. Federal Water & Gas Corp.*, 332 U.S. 194, 196 (1947) ("a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds

---

[2]The regulations describe a severe impairment in the negative:  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).

16

invoked by the agency."); *Municipal Resale Serv. Customers v. Federal Energy Regulatory Comm'n*, 43 F.3d 1046, 1052 (6th Cir. 1995) (same); *Amoco Prod. Co. v. National Labor Relations Bd.*, 613 F.2d 107, 111 (5th Cir. 1980) (same and citing cases); *Sparks v. Bowen*, 807 F.2d 616, 617 (7th Cir. 1986) (in social security review, court must evaluate the reasons set forth by the ALJ); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). As ALJ's findings on this matter are essentially unreviewable by this Court, his decision is vacated and the proceedings are remanded so that the ALJ can make detailed findings.

Similarly, the ALJ failed to provide any explanation for why Ms. Hamlin suffered no limitations from her pancreatitis. As such, upon remand, the ALJ shall make detailed findings with regard to this issue, and any limitations related to Plaintiff's asthma and hepatitis.

### B. Drug and Alcohol Abuse

Ms. Hamlin also asserts that the ALJ erred in finding that Ms. Hamlin's drug and alcohol abuse are material to a finding of disability.

On March 29, 1996, Congress passed the Contract With America Advancement Act of 1996, Pub.L. No. 104-121, 110 Stat. 847 (1996) ("the CWAA Act"). Section 105(b)(1) of the CWAA reshaped the definition of disability under the Social Security Act with respect to alcohol dependency. The effect of the change was to eliminate alcoholism or drug addiction as a basis for obtaining disability insurance benefits. The amended version of 42 U.S.C. § 423(d)(2)(c) now provides: "An individual shall not be considered to be disabled

for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c). In order to determine whether an alcohol or drug addiction is a contributing factor material to the disability determination, the Commissioner must determine whether a claimant would still be disabled if she quit using alcohol or drugs. *See* 20 C.F.R. § 404.1535(b)(1).

In the instant action, the ALJ determined that Ms. Hamlin would not be disabled if she quit using drugs and alcohol. However, the ALJ fails to cite any medical evidence supporting this finding. While the record clearly shows that Ms. Hamlin suffered from a drug and alcohol problem in 2005 and possible issues with drugs and alcohol before that point, the ALJ did not cite to any specific evidence in the record demonstrating that Hamlin's alcohol and drug abuse are contributing factors material to Ms. Hamlin's disability. The extent of the ALJ's analysis on this matter is:

> I find that the claimant would not have any 'severe' mental impairment independent of her drug and alcohol dependence. The medical records show that she has had numerous hospitalizations for pancreatitis. However, it is highly likely that her pancreatitis and abdominal symptoms would be greatly improved if she were to stop drinking. * * *
>
> I conclude that the evidence shows that if the claimant were to cease drinking and taking drugs she would not have a medically determinable impairment and her physical impairments would not be a severe impairment. Her physical impairments of asthma and hepatitis would not have more than a minimal effect on her basic work abilities and hence would not qualify as a severe impairment if she were to cease drinking and taking drugs. Therefore the claimant would not have a severe impairment and would not be disabled.

The ALJ fails to cite any medical evidence in support of his conclusory assertion and there is minimal evidence in the record regarding this matter. While Ms. Hamlin was instructed to refrain from drinking and Ms. Hamlin herself admitted that she knew alcohol

could "agitate" her pancreatitis, there is no evidence in the record that indicates the extent of the effect of alcohol and drug abuse on Ms. Hamlin's condition. There is no citation to any evidence from treating physicians or a medical examiner indicating that Ms. Hamlin would not suffer a severe impairment or limitations from her alleged disabilities, if she stopped alcohol and drug use.  The ALJ is not a medical doctor or witness and is not qualified to ascertain whether someone's physical limitations are a product of alcohol or drug use without some competent medical evidence or more thorough explanation for his determination.  His decisions must be based on testimony and medical evidence in the record, and "[t]he ALJ cannot make his own independent medical determinations about the claimant."  *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985), *citing Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982); *accord Tucker v. Sullivan*, 1992 U.S. Dist. LEXIS 11554 (D. Kan. 1992).

As ALJ did not cite to any evidence in support of his finding that drug and alcohol abuse are material to a finding of disability, the decision is flawed and the basis for the ALJ's decision on this matter is essentially unreviewable.  Thus, the Court must remand the action on the basis of this ground of error, as well.

Ms. Hamlin also asserts that the ALJ erred in failing to grant controlling weight to the treating physician.  As the ALJ may reach different findings upon remand, the Court need not decide whether the ALJ erred on these grounds.

19

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner is VACATED and REMANDED  and judgment is entered in favor of the plaintiff.

**IT IS SO ORDERED.**

<u>/s/ Nancy A. Vecchiarelli</u>
U.S. Magistrate Judge

Date: October 1, 2008